IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERRILL LYNCH COMMERCIAL FINANCE CORP., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 09 C 1449 |
| OMNI WATCH AND CLOCK COMPANY, LLC, ROBERT SCHNECK, PC TIME CORP., OMNI QUARTZ LTD., and M-T TIME, LTD., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On March 6, 2009, Plaintiff Merrill Lynch Commercial Finance Corp. ("MLCFC") brought the present Complaint against Defendants Omni Watch and Clock Company, LLC ("Omni Watch"), Robert Schneck ("Schneck"), PC Time Corporation ("PC Time"), Omni Quartz, Ltd. ("Omni Quartz"), and M-T Time, Ltd. ("M-T Time") to collect amounts owed under the parties' agreements under a theory of breach of contract based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Before the Court is MLCFC's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants MLCFC's motion.

### BACKGROUND

**I.    Northern District of Illinois Local Rule 56.1**

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Specifically, Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each

side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

Here, Defendants failed to file a proper response under Local Rule 56.1(b)(3)(B) because they did not admit or deny each of MLCFC's factual statements made in MLCFC's Rule 56.1(a)(3) Statement of Facts. Due to Defendants' failure, the Court admits as true all well-supported facts set forth in MLCFC's Statement of Facts. *See Ciomber,* 527 F.3d at 644; *Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1").

## II. Relevant Facts

### A. Parties

MLCFC is a Delaware corporation with its principal place of business in Chicago, Illinois. (R. 19-1, Pl.'s Local Rule 56.1(a)(3) Stmt. Facts ¶ 1.) By an Assignment Agreement dated December 29, 2007, Merrill Lynch Business Financial Services, Inc. ("MLBFS") transferred and assigned to MLCFC all rights, title, and interest in and to the WCMA Loan and

2

Security Agreement dated as of September 23, 2003 ("Loan and Security Agreement"), the WCMA Reducing Revolver – Loan and Security Agreement dated as of July 23, 2007 ("Reducing Revolver"), and the related September 23, 2003 and July 23, 2007 Unconditional Guarantees. (*Id.* ¶ 2.) Since the December 29, 2007 Assignment Agreement, MLCFC has been the sole owner of the Loan and Security Agreement, Reducing Revolver, and Unconditional Guarantees. (*Id.*)

Omni Watch is a New York limited liability company with its principal place of business in Brooklyn, New York, and is a manufacturer and marketer of clocks and watches for sale in the United States. (*Id.* ¶ 3.) Omni Watch is wholly owned by Omni International Holdings Limited, a Hong Kong limited liability company. (*Id.*) The members of Omni International Holdings Limited are Polywell Enterprise Limited, a limited liability company incorporated under the laws of the British Virgin Islands; Fong Ho Yan; and Omni Quartz, a New York corporation with its principal place of business in New York. (*Id.*) Polywell Enterprise Limited is wholly owned by Peace Mark (Holdings) Limited, a Bermuda corporation with its principal place of business in Hong Kong. (R. 30-1, Am. ¶ 3 Compl.) Moreover, Schneck is a citizen of New York, PC Time is a New York corporation with its principal place of business in Brooklyn, New York, and Omni Quartz is New York corporation with its principal place of business in New York, New York. (*Id.* ¶¶ 4, 5, 6.) M-T Time is also a New York corporation with its principal place of business in New York, New York. (*Id.* ¶ 7.)

**B.     Lending Agreement of September 2003**

MLCFC and MLBFS are in the business of offering commercial financing for businesses through lines of credit, revolving loans, and other loan products. (*Id.* ¶ 10.) In September 2003, MLBFS began providing credit and lending money to Omni Watch pursuant to the Loan and

3

Security Agreement. (*Id.* ¶ 11; R. 27-1, Defs.' Local Rule 56.1(b)(3) Resp. & Add'l Facts ¶ 1.) Schneck executed the Loan and Security Agreement on behalf of Omni Watch. (Pl.'s Stmt. Facts ¶ 13.) Thereafter, Omni Watch requested and received an extension of the maximum amount of credit under the Loan and Security Agreement to $7,500,000, as well as an extension of the maturity date until July 31, 2008. (*Id.* ¶ 14.) To secure payment and performance of Omni Watch's obligations under the Loan and Security Agreement, Schneck, PC Time, Omni Quartz, and M-T Time entered into unconditional guarantees of those obligations ("September 23, 2003 Unconditional Guarantees"). (*Id.* ¶ 15.) Each of the September 23, 2003 Unconditional Guarantees was executed by Schneck – either in his individual capacity or on behalf of the entity providing the guaranty. (*Id.* ¶ 16.) As additional security for Omni Watch's obligations under the Loan and Security Agreement, Omni Watch granted MLBFS a security interest in Omni Watch's inventory and accounts, as well as other collateral. (*Id.* ¶ 18; Defs.' Stmt. Facts ¶ 2.)

The Loan and Security Agreement provides that the failure to pay amounts due and owing under the Loan and Security Agreement or the failure to perform any covenants or agreements under the Loan and Security Agreement constitutes an "Event of Default." (Pl.'s Stmt. Facts ¶ 19.) Upon the occurrence of an Event of Default, MLBFS had the right, at its sole option, to declare the principal and interest under the Loan and Security Agreement immediately due. (*Id.* ¶ 20.) Moreover, the Loan and Security Agreement states that "[a]ll rights and remedies of MLBFS herein are severable and cumulative and in addition to all other rights and remedies available in the Loan Documents, at law or in equity, and any one or more of such rights and remedies may be exercised simultaneously or successively." (*Id.*) Under the September 23, 2003 Unconditional Guarantees that relate to the Loan and Security Agreement,

each guarantor unconditionally guaranteed to MLBFS:

> (i) the prompt and full payment when due, by acceleration or otherwise, of all sums now or any time hereafter due from [Omni Watch] to MLBFS under the Guaranteed Documents, (ii) the prompt, full and faithful performance and discharge by [Omni Watch] of each and every other covenant and warranty of [Omni Watch] set forth in the Guaranteed Documents, and (iii) the prompt and full payment and performance of all other indebtedness, liabilities, and obligations of [Omni Watch] to MLBFS, howsoever created or evidenced, and whether now existing or hereafter arising (collectively, the 'Obligations').

(*Id.* ¶ 21.)

The September 23, 2003 Unconditional Guarantees also state that "[t]his Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly paid, performed and discharged." (*Id.* ¶ 22.) In addition, the September 23, 2003 Unconditional Guarantees state that:

> [T]he liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS from time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guaranteed Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guaranteed Documents; (b) any acceptance by MLBFS of any collateral or security for, or other guarantees of, any of the Obligations; (c) any failure, neglect, or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of [Omni Watch] or any other guarantor, possessed by or under the control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d) any invalidity, irregularity or unenforceability of all or any part of the Obligations, of any collateral security for the Obligations, or the Guaranteed Documents; (e) any application of payments or credits by MLBFS; (f) the granting of credit from time to time by MLBFS to [Omni Watch] in excess of the amount set forth in the Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any of their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required, at any time, as a condition of Guarantor's obligations hereunder, to resort to payment from [Omni Watch] or other persons or entities whatsoever, or any of their properties or estates, or resort to any collateral or pursue or exhaust any other rights or remedies whatsoever.

(*Id.* ¶ 23.)

### C. Lending Agreement of July 23, 2007

In July 2007, Omni Watch requested and received an extension of additional credit from MLBFS pursuant to the Reducing Revolver. (*Id.* ¶ 24; Defs.' Stmt. Facts ¶ 14.) The purpose of the Reducing Revolver was to restructure Omni Watch's existing indebtedness to MLBFS and pay down its outstanding balance under the parties' Loan and Security Agreement. (Pl.'s Stmt. Facts ¶ 24.) Pursuant to the Reducing Revolver, MLBFS provided Omni Watch with an additional extension of credit not to exceed $3,000,000 for the purpose of paying down the balance of the Loan and Security Agreement. (*Id.* ¶ 25.) Schneck executed the Reducing Revolver on behalf of Omni Watch. (*Id.* ¶ 27.) To secure payment and performance of Omni Watch's obligations under the Reducing Revolver, Schneck, PC Time, Omni Quartz, and M-T Time entered into unconditional guarantees of those obligations ("July 23, 2007 Unconditional Guarantees"). (*Id.* ¶ 28.) Each of the July 23, 2007 Unconditional Guarantees was executed by Schneck – either in his individual capacity or on behalf of the entity providing the guaranty. (*Id.* ¶ 30.) As additional security for Omni Watch's obligations under the Reducing Revolver, Omni Watch granted MLBFS a security interest in its inventory and accounts, as well as other collateral. (*Id.* ¶ 31; Defs.' Stmt. Facts ¶ 15.)

The Reducing Revolver states that the failure to pay amounts due and owing under the Loan and Security Agreement or Reducing Revolver or the failure to perform any covenants or agreements under each of those agreements constitutes an Event of Default. (Pl.'s Stmt. Facts ¶ 32.) Upon the occurrence of an Event of Default, MLBFS had the right, at its sole option, to declare the principal and interest owed under the Loan and Security Agreement and Reducing Revolver immediately due and payable or exercise a number of other rights. (*Id.* ¶ 33.) The

6

Reducing Revolver specifically states that "[a]ll rights and remedies of MLBFS herein are severable and cumulative and in addition to all other rights and remedies available in the Loan Documents, at law or in equity, and any one or more of such rights and remedies may be exercised simultaneously or successively." (*Id.*)  In addition, under the July 23, 2007 Unconditional Guarantees related to the Reducing Revolver, each guarantor unconditionally guaranteed to MLBFS:

> (i) the prompt and full payment when due, by acceleration or otherwise, of all sums now or any time hereafter due from [Omni Watch] to MLBFS under the Guaranteed Documents, (ii) the prompt, full and faithful performance and discharge by [Omni Watch] of each and every other covenant and warranty of [Omni Watch] set forth in the Guaranteed Documents, and (iii) the prompt and full payment and performance of all other indebtedness, liabilities, and obligations of [Omni Watch] to MLBFS, howsoever created or evidenced, and whether now existing or hereafter arising (collectively, the 'Obligations.'").

(*Id.* ¶ 34.)

Moreover, the July 23, 2007 Unconditional Guarantees state that "[t]his Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly paid, performed and discharged." (*Id.* ¶ 35.) The July 23, 2007 Unconditional Guarantees further state that:

> The liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS from time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guaranteed Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guaranteed Documents; (b) any acceptance by MLBFS of any collateral or security for, or other guarantees of, any of the Obligations; (c) any failure, neglect, or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of [Omni Watch] or any other guarantor, possessed by or under the control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d) any invalidity, irregularity or unenforceability of all or any part of the Obligations, of any

7

> collateral security for the Obligations, or the Guaranteed Documents; (e) any application of payments or credits by MLBFS; (f) the granting of credit from time to time by MLBFS to [Omni Watch] in excess of the amount set forth in the Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any of their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required, at any time, as a condition of Guarantor's obligations hereunder, to resort to payment from [Omni Watch] or other persons or entities whatsoever, or any of their properties or estates, or resort to any collateral or pursue or exhaust any other rights or remedies whatsoever.

(*Id*. ¶ 36.)

### D. Default of Lending Agreements

On August 7, 2008, MLCFC, as assignee of MLBFS, declared Omni Watch in default for failing to meet its obligations under the Loan and Security Agreement and Reducing Revolver. (*Id*. ¶ 37.) MLCFC also elected not to renew the Loan and Security Agreement, which expired on July 31, 2008, and thus terminated the Reducing Revolver. (*Id*.) Without waiving any of its rights, MLCFC agreed to extend the maturity date of the Loan and Security Agreement to September 1, 2008. (*Id.* ¶ 38.) As such, on September 1, 2008, all of the amounts outstanding under the Loan and Security Agreement and Reducing Revolver were due and payable in full. (*Id*.) Although Defendants received the August 7, 2008, Notice of Default and Non-Renewal Letter, Defendants failed to pay the amounts owed to MLCFC under the Loan and Security Agreement and Reducing Revolver on or before September 1, 2008. (*Id*. ¶¶ 40, 41.) Thus, on September 10, 2008, MLCFC sent another letter to Omni Watch, Schneck, PC Time, Omni Quartz, and M-T Time notifying them of the occurrence and continuation of defaults for failing to meet their obligations under the Loan and Security Agreement, Reducing Revolver, and Unconditional Guarantees and demanded payment of all amounts due and owing to MLCFC. (*Id*. ¶ 42.) Although Defendants received the September 10, 2008 Notice of Default and

8

Acceleration, Defendants failed to pay the amounts owed to MLCFC under the Loan and Security Agreement and Reducing Revolver. (*Id.* ¶¶ 44, 45.)

E.  **Amounts Due and Owing**

As of April 30, 2009, the total amounts that remain due and owing under the Loan and Security Agreement and September 23, 2003 Unconditional Guarantees, include: the outstanding principal and interest in the amount of Seven Million Eight Hundred Forty-Seven Thousand Seven Hundred Five Dollars and 32/100 Cents ($7,847,705.32), with interest accruing thereafter at the rate of One Thousand Sixty-Four Dollars and 35/100 Cents ($1,064.35) per diem, plus applicable late charges and the costs and fees incurred in connection with this proceeding, which continue to accrue. (*Id.* ¶ 46.) As of April 30, 2009, the total amounts that remain due and owing under the Reducing Revolver and July 23, 2007 Unconditional Guarantees include: outstanding principal and interest in the amount of Two Million Five Hundred Sixty-Three Thousand Six Hundred Forty Dollars and 05/100 Cents ($2,563,640.05), with interest accruing thereafter at the rate of Three Hundred Forty-Seven Dollars and 70/100 Cents ($347.70) per diem, plus applicable late charges and the costs and fees incurred in connection with this proceeding, which continue to accrue. (*Id.* ¶ 47.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Estate of Suskovich v. Anthem Health Plans of Va., Inc.,* 553 F.3d 559, 563 (7th Cir. 2009) (quoting Fed. R. Civ. P 56(c)). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

## ANALYSIS

**I.  Impairment of Collateral**

Defendants do not dispute that they are in default for failing to pay on the Loan and Security Agreement, Reducing Revolver, and the related Unconditional Guarantees. Instead, Defendants argue that MLBFS failed to perfect a lien on certain assets in China that are in Omni Watch's control. Based on this alleged failure, Defendants argue that MFBFS's actions impaired the value of the China collateral under the parties' agreements, and thus Defendants breached the Loan and Security Agreement and Reducing Revolver. Assuming, *arguendo*, that MLBFS failed to perfect the security interests in the China assets, the express terms in the parties' agreements do not support Defendants' arguments.

The parties do not dispute that Illinois law controls the parties' contracts[1] based on the choice-of-law provisions of the Loan and Security Agreement and Reducing Revolver. To

---

[1] "In Illinois, a guaranty is a legally enforceable contract that must be construed according to its terms, so long as they are clear and unambiguous." *FDIC v. Rayman*, 117 F.3d 994, 998 (7th Cir. 1997).

10

establish a breach of contract claim under Illinois law, a party must establish: (1) the existence of a valid and enforceable contract; (2) substantial performance of the contract; (3) breach of the contract; and (4) resultant damages. *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill.App.3d 752, 286 Ill.Dec. 734, 814 N.E.2d 960, 967 (Ill. 2004)). In Illinois, the determination of whether a contract is ambiguous, as well as the construction of an unambiguous contract, are questions of law for the Court. *See Gallagher v. Lenart,* 226 Ill.2d 208, 219, 314 Ill.Dec. 133, 140, 874 N.E.2d 43, 50 (Ill. 2007); *Central Ill. Light Co. v. Home Ins. Co.,* 213 Ill.2d 141, 153-54, 290 Ill.Dec. 155, 163, 821 N.E.2d 206, 214 (Ill. 2004). "The primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher,* 226 Ill.2d at 232. Illinois courts interpret contracts according to the "four corners" rule: "'[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined by the language used. It is not to be changed by extrinsic evidence.'" *Camico Mut. Ins. Co. v. Citizens Bank,* 474 F.3d 989, 992-93 (7th Cir. 2007) (quoting *Davis v. G.N. Mortgage Corp.,* 396 F.3d 869, 878 (7th Cir. 2005) (citations and internal quotation marks omitted)). In applying this rule, Illinois courts first look to the language of the contract alone. *See Camico,* 474 F.3d at 993 (citing *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 462, 236 Ill.Dec. 8, 10, 706 N.E.2d 882, 884 (Ill. 1999)); *see also Gallagher,* 226 Ill.2d at 233 ("A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent."). Illinois courts interpret contract terms according to their plain meaning unless otherwise defined. *See Utility Audit, Inc. v. Horace Mann Serv. Corp.,* 383 F.3d 683, 687 (7th Cir. 2004). "Although words should be given their ordinary and accepted meaning, they must

also be viewed in context, and the contract must be considered as a whole in order to ascertain the parties' intent." *Id.*; *see also Gallagher,* 226 Ill.2d at 233.

If the language of the contract is facially clear and unambiguous, courts interpret the contract as a matter of law without the use of extrinsic evidence. *See Camico,* 474 F.3d at 993; *Air Safety,* 185 Ill.2d at 462. A contract provision is ambiguous only if it is susceptible to more than one reasonable interpretation. *PPM Fin., Inc. v. Norandal USA, Inc.,* 392 F.3d 889, 893 (7th Cir. 2004); *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.,* 166 Ill.2d 520, 529, 211 Ill.Dec. 459, 463, 655 N.E.2d 842, 846 (Ill. 1995). "The fact that parties disagree about the meaning of a contractual provision does not mean the contract is ambiguous." *Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.,* 225 F.3d 876, 879 (7th Cir. 2000).

In support of their argument that MLBFS's failure to perfect the security interests in the China assets relieves them of liability and constitutes a breach of contract, Defendants refer to Sections 3.5(i) of the Loan and Security Agreement and 4.5(i) of the Reducing Revolver. Sections 3.5 and 4.5 are entitled "Events of Default" and state that "[t]he occurrence of any of the following events shall constitute an 'Event of Default' under this Loan Agreement." (Pl.'s Stmt. Facts, Ex. 1(A), Agmt., at 8; Ex. 1(B), Revolver, at 9; *see also* Pl.'s Stmt. Facts ¶¶ 19, 20, 32, 33.) Sections 3.5(i) and 4.5(i) are specifically entitled, "Collateral Impairment," and state:

> The loss, theft or destruction of any Collateral, the occurrence of any material deterioration or impairment of any Collateral or any material decline or depreciation in the value or market price thereof (whether actual or reasonably anticipated), which causes any Collateral, ***in the sole opinion of MLBFS***, to become unsatisfactory as to value or character; or any levy, attachment, seizure or confiscation of the Collateral which is not released within ten (10) Business Days.

(*Id.*, Agmt., at 9, Revolver, at 10) (emphasis added).

Viewed in the context of the agreements as a whole, the unambiguous language of

Sections 3.5 and 4.5 set forth certain actions or inactions on the part of Omni Watch that would create a default under the Loan and Security Agreement or the Reducing Revolver, including, for example, Omni Watch's failure to pay, Omni Watch's breach of warranty, or Omni Watch's impairment of collateral. Sections 3.5(i) and 4.5(i) set forth the conditions of any such default in relation to the impairment of collateral by Omni Watch "in the sole opinion of MLBFS." Because Section 3.5 of the Loan and Security Agreement and Section 4.5 of the Reducing Revolver concern Omni Watch's actions or inactions as the debtor – and not MLBFS's duties or obligations as the lender – Defendants' argument fails.

The Court's conclusion is further supported by other provisions in the parties' agreements, including Section 3.6(e) of the Loan and Security Agreement and Section 4.6(e) of the Reducing Revolver, which both state:

> MLBFS shall be under no duty or obligation to (i) preserve, protect, or marshal the Collateral, (ii) preserve or protect the rights of any Credit Party or any other Person claiming an interest in the Collateral; (iii) realize upon the Collateral in any particular order or manner; (iv) seek repayment of any Obligations from any particular source...

(*Id.*, Agmt., at 10, Revolver, at 11.) Thus, under the unambiguous and unequivocal language of Sections 3.6(e) and 4.6(e), MLBFS had no duty or obligation to preserve or protect the collateral. Moreover, under the Unconditional Guarantees, "the liability of the Guarantor hereunder shall in no event be affected or impaired by ... any failure, neglect, or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security..." (*Id.*, Exs. 1(C-J), at 1; *see also* Pl.'s Stmt. Facts ¶¶ 23, 36.) Therefore, under the Unconditional Guarantees, Defendants – as guarantors – are not relieved of their liability based on MLBFS's failure or neglect to protect collateral.

Accordingly, based on the clear and unambiguous language of the parties' agreements

and the undisputed facts of this case, Defendants' argument that MLBFS's alleged impairment of the China collateral precludes recovery fails because MLBFS's alleged failure to perfect the collateral at issue does not release Defendants of their liability under the agreements or constitute a breach of the Loan and Security Agreement and Reducing Revolver. Moreover, based on the unambiguous language of the Unconditional Guarantees, MLCFC is entitled to recover from each of the Defendants the amounts that are owed MLCFC. (Pl.'s Stmt. Facts ¶¶ 21, 22, 34, 35.)

## II. Good Faith and Fair Dealing

Next, Defendants argue that because MLBFS violated and/or breached the Loan and Security Agreement and the Reducing Revolver Agreement, MLBFS breached its duty of good faith and fair dealing. As discussed above, Defendants' argument is factually baseless because MLBFS did not violate or breach the parties' agreements. In addition, Defendants' argument has no legal basis.

Under Illinois law, a covenant of good faith and fair dealing is implied in every contract. *See Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003). "Illinois courts have consistently held that the covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract." *Fox v. Heimann,* 375 Ill.App.3d 35, 42, 313 Ill.Dec. 366, 872 N.E.2d 126 (Ill. 2007) (citing *Cramer v. Insurance Exch. Agency,* 174 Ill.2d 513, 525, 221 Ill.Dec. 473, 675 N.E.2d 897 (1996); *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1443 (7th Cir. 1992)). "Rather, this obligation is essentially used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." *Fox,* 375 Ill.App.2d at 42. Thus, the covenant of good faith and fair dealing is a rule of contract construction, not a stand-alone obligation. *See In re Kmart Corp.,*

14

434 F.3d 536, 542 (7th Cir. 2006); *see also Iowa Physicians' Clinic Med. Found. v. Physicians Ins. Co. of Wis.,* 547 F.3d 810, 813 (7th Cir. 2008) ("contractual covenant of good-faith and fair dealing" is "used only as a construction aid in determining the intent of contracting parties.") (quoting *Cramer,* 174 Ill.2d at 523).

Because there is no ambiguity in the parties' agreements, the covenant of good faith and fair dealing is not applicable under the circumstances. *See id.*; *see also Cromeens,* 349 F.3d at 395-96 ("Illinois law holds that parties to a contract are entitled to enforce the terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract."). As such, MLCFC is entitled to enforce the express terms of the parties' agreements because Omni Watch is in default for failing to meet its obligations under the Loan and Security Agreement and Reducing Revolver.

### III. MLCFC as Assignee

Finally, the Court rejects Defendants' argument that MLCFC has not presented sufficient documentary evidence showing that MLBFS properly transferred and assigned to MLCFC all rights, title, and interest in and to the Loan and Security Agreement, Reducing Revolver, and the related Unconditional Guarantees because MLCFC has provided the Court with a redacted copy of the Assignment Agreement between MLCFC and MLBFS dated December 29, 2007. (*See* R. 25-1, Reply, Ex. 1.)

### CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' Summary Judgment Motion. The Court enters judgment in the amount of Seven Million Eight Hundred Forty-Seven Thousand Seven Hundred Five Dollars and 32/100 Cents ($7,847,705.32) as of April 30, 2009, with interest accruing thereafter at the rate of One Thousand Sixty-Four Dollars and 35/100 Cents

($1,064.35) per diem, plus applicable late charges and the costs and fees incurred in connection with this proceeding, as the total amount due and owing under the Loan and Security Agreement and September 23, 2003 Unconditional Guarantees. (Pl.'s Stmt. Facts ¶ 46.) The Court also enters judgment in the amount of Two Million Five Hundred Sixty-Three Thousand Six Hundred Forty Dollars and 05/100 Cents ($2,563,640.05) as of April 30, 2009, with interest accruing thereafter at the rate of Three Hundred Forty-Seven Dollars and 70/100 Cents ($347.70) per diem, plus applicable late charges and the costs and fees incurred in connection with this proceeding, as the total amount due and owing under the Reducing Revolver and July 23, 2007 Unconditional Guarantees. (*Id*. ¶ 47.)

**Date:** July 28, 2009

                                          **ENTERED**

                                          _____
                                          **AMY J. STEEVE**
                                          **United States District Court Judge**